UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CRYSTAL HARTSFIELD, DAVID HARTSFIELD, CADIE HARTSFIELD and KEVON HARTSFIELD, Individually and as Heirs of the Estate of Kendrick Hartsfield, Deceased, | § § § § § | CIVIL ACTION NO. _____ |
| Plaintiffs, | § § | |
| v. | § § § | JURY DEMAND |
| DAIMLER, AG, a foreign corporation; MERCEDES-BENZ VANS, LLC, a South Carolina entity; and DAIMLER VANS USA LLC, a New Jersey entity, | § § § § § § | |
| Defendants. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

1. Crystal Hartsfield, David Hartsfield, Cadie Hartsfield and Kevon Hartsfield, Individually and as Heirs of the Estate of Kendrick Hartsfield, Deceased, Plaintiffs, bring the following claims against Defendants and respectfully state:

**PARTIES**

2. Plaintiffs, Crystal Hartsfield, David Hartsfield, Cadie Hartsfield and Kevon Hartsfield, Individually and as Heirs of the Estate of Kendrick Hartsfield, Deceased, are residents of the Eastern District of Texas.

3. Defendant, Daimler AG, is a German entity that can be served via the Hague Convention on International Service Abroad, through the German central legal authority, to Daimler, A.G., 70546 Stuttgart, Germany. Daimler AG is and, at all relevant times, was doing business in the State of Texas by selling and distributing its products through a chain of distribution which sold many thousands of products in Texas, including the Freightliner Sprinter van driven

1

by Hartsfield. Daimler AG was further doing business in Texas through a marketing campaign directed through its American marketing subsidiaries to create a market and support the sale of Sprinter vans in Texas. Moreover, Daimler AG maintains a dealership network in Texas that, through the provision of warranty service, replacement parts, and other such activities, cultivates a marketplace for Sprinter van sales and use in Texas. As a result, Daimler AG purposefully avails itself of the rights and privileges of doing business in Texas.

4. Defendant, Mercedes-Benz Vans, LLC ("MBV"), is a limited liability company located in South Carolina and incorporated in the state of South Carolina with its principal place of business located at 1513 Savannah Highway, Charleston, South Carolina 29407. For purposes of diversity jurisdiction, the citizenship of an LLC is that of its members. *See GMAC Comm'l Credit LLC v. Dillard's Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004). Upon information and belief, none of MBV's members reside in Texas. MBV is and, at all relevant times, was doing business in the State of Texas by selling and distributing its products through a chain of distribution which sold many thousands of products in Texas, including the Freightliner Sprinter van driven by Hartsfield. This Defendant can be served via its registered agent for service in South Carolina, CT Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.

5. Defendant, Daimler Vans USA LLC ("Daimler Vans"), is a limited liability company located in New Jersey and incorporated in the state of New Jersey with its principal place of business located at One Mercedes Drive, Montvale, New Jersey 07645. Upon information and belief, none of Daimler Vans' members reside in Texas. Daimler Vans is and, at all relevant times, was doing business in the State of Texas by selling and distributing its products through a chain of distribution which sold many thousands of products in Texas, including the Freightliner Sprinter

2

van driven by Hartsfield. This Defendant can be served via its registered agent for service in Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) because this controversy is between citizens of different states and the amount in controversy exceeds $75,000.

7. Venue is proper in this judicial district pursuant to 13 U.S.C. § 1391, *et seq.* because all or a substantial part of the events giving rise to the subject claims occurred within this District.

8. Venue is proper and convenient in this division of the Eastern District of Texas because the important and key evidence, including documents, related to the design and manufacture of the defective products alleged herein, are located in either Germany or South Carolina but can be conveniently presented to this Court and the jury in this division's courthouse through the use of modern technology. Further, Plaintiffs reside near this division's courthouse, and the investigating DPS officer resides near and works out of the Texas Department of Public Safety's office near this division's courthouse. Further, each of the Defendants' products are targeted for sale and use within this District and division. Therefore, the residents of this District and division have a significant interest in the outcome of this case. Moreover, this Court has presided over related legal matters and is very familiar with the legal issues, evidence, parties, and circumstances involved in this case.

9. The Defendants are subject to specific jurisdiction in this Court because they purposefully availed themselves of the privilege of doing business in Texas by targeting the subject vehicle and its components for sale in Texas, including within this District. *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021). The subject vehicle and its component parts, including the manufactured equipment and cargo, reached Texas while in the

stream of commerce and caused injury to Mr. Hartsfield in Texas. Defendants also, working in concert and with coordination, engaged in a marketing campaign targeting citizens of Texas for advertisements promoting the sale and use of Sprinter vans in Texas. Defendants also, through the use of an orchestrated dealer network, created a system for warranty service, replacement parts sales, and other customer support in Texas which further create a target market for Sprinter vans in Texas. Through all of these activities, and other similar related activities, Defendants purposefully availed themselves of the right to do business in Texas. The subject claims arise from or relate to the Defendants' efforts to target Texas. Specific jurisdiction is proper over the Defendants in Texas.

**FACTS**

10. The subject light commercial van was designed by Daimler, AG in the 2005-2013 timeframe. The design-related decisions took place in Germany and the related documents, test materials, and similar relevant technical information are located in Germany. The persons with knowledge of these events and their file materials are, upon information and belief, also located in Germany.

11. By 2007-2013, it was well known in the automotive community that frontal collisions are one of the most common types of motor vehicle accident on United States roadways. Governments, insurance groups, and auto manufacturers recognized the importance of protecting occupants in frontal collisions by preserving the safety cabin in which they ride. Frontal crash testing regimens, both government-led and private-industry driven, were used with passenger vehicles sold in the United States in an effort to ensure adequate protection for occupants. Daimler AG was well aware of the prevalence of frontal collisions and the need to protect occupants in such collisions. In fact, Defendants themselves offer a wide variety of cabinetry and "upfitting"

options for the Sprinter work van. Here are just a few images of the upfitting options available directly through Daimler at mbvans.com:







12. The subject light commercial van was not designed to be crashworthy. The safety bulkhead wall equipped in the subject van was inadequate to protect a driver from equipment in the cargo area of the van moving forward during a frontal collision.

13. Daimler AG was well aware that the subject model van is commonly equipped with work-related cabinetry and cargo in the rear of the van. In fact, Daimler offers through its mbvans.com website for customers to "upfit" the Sprinter van with various types of "partitions":




A Ranger brand "Partition" and a Sortimo brand "Partition" available at mbvans.com for "upfitting" a Sprinter van. Daimler AG, MBV, and Daimler Vans were well aware of the need for an adequate safety bulkhead wall. Moreover, Daimler AG was aware an adequate safety bulkhead wall was necessary to protect an operator of the van during a frontal collision. Without an adequate and crashworthy safety bulkhead wall, the open environment of the rear of the van would allow equipment and materials to move forward with force during a frontal collision and cause injury to a driver.

14. Defendant, Daimler AG, was also aware of the importance of preventing excessive intrusion into the occupant cabin during a frontal collision. Daimler AG for many years has performed testing and other design activities to prevent excessive intrusion and protect occupants in a frontal collision in passenger cars. Daimler AG knew that occupants, like Mr. Hartsfield, would be driving the subject vehicle and would experience frontal collisions in the field.

Nevertheless, Daimler AG chose not to engage in the same test regimen or design efforts for the subject vehicle as it had for other passenger vehicles. Thereby, Daimler AG knew that the subject vehicle would not adequately protect occupants in the event of a frontal crash.

15. Defendant MBV participated in the design of the subject van and altered or modified the van, including installation of the safety bulkhead wall, consistent with Texas Civil Practice and Remedies Code § 82.003 (a)(1), (2), and (3). Defendant Daimler Vans was a seller or retailer of the subject defective completed van and, as such, is liable consistent with the Restatement of Torts (Second) § 402A and Texas Civil Practice and Remedies Code § 82.003(7)(B), if any manufacturer is found to be not subject to the jurisdiction of the Court.

16. Daimler AG, working in conjunction with MBV and Daimler Vans, made the strategic marketing decision to target the marketing and sale of the subject model van to the United States, generally, and Texas users, specifically. Daimler AG orchestrated the formation of MBV and Daimler Vans in the United States for the purpose, in part, of assembling and manufacturing Sprinter vans for distribution throughout the United States. Moreover, Daimler AG created a marketing network to target potential purchasers and users throughout the United States, generally, and in Texas, specifically.

17. Daimler AG, through its wholly owned subsidiary, Daimler Vans, created a dealer network and website, www.mbvans.com, which markets the Sprinter van through a Texas dealer network. For example, if one goes to www.mbvans.com and searches by the zip code "75206" (Dallas) for Sprinter van retailers, three Daimler dealerships are provided: Mercedes-Benz of Plano, Park Place Motorcars Grapevine, and Park Place Motorcars Arlington. Daimler AG allowed this partnership between Daimler Vans and its Mercedes passenger vehicle dealer network to be formed and exist. In fact, Daimler Vans is registered to do business with the Texas Secretary of

State. Moreover, Daimler AG and MBV gather information concerning vehicle defects, warranty claims, and other customer data from Texans to both aid in regulatory compliance and develop effective marketing and service processes. Simply put, Daimler AG, MBV, and Daimler Vans are no strangers to Texas. Instead, these entities targeted Texas businesses and consumers for the sale of the subject model Sprinter van.

18. The van involved in this case was used in Texas to perform ordinary work tasks by Mr. Hartsfield on a near daily basis.

19. On May 8, 2019, Kendrick Hartsfield ("Hartsfield") was traveling northbound in a 2013 Freightliner Sprinter van, VIN # WDYPE7CC0D5745696, on Toll Road 49, near Tyler, Texas. At the same time, Barbara Busch Beagle ("Beagle") was traveling southbound on Toll Road 49 in a 2006 Toyota Sequoia, VIN # 5TDZT34A06S278485.

20. Beagle's Sequoia began to hydroplane, rotated counterclockwise, and entered the northbound lane of travel. Beagle's Sequoia was then struck on its right side by Hartsfield's van in the northbound lane. A fire resulted which engulfed the Sequoia and spread to the Sprinter van, which was still occupied by Mr. Hartsfield.

21. Hartsfield survived the initial crash without life-threatening injuries but was pinned inside the Sprinter van by the excessive intrusion into the occupant cabin by the Sprinter's front-end structure and by the displaced safety bulkhead wall that pushed into his seating area. These factors working in concert prevented his exit from the vehicle. As Mr. Hartsfield was trapped in his vehicle, the fire spread from the Sequoia and engulfed the Sprinter van. Witnesses describe Mr. Hartsfield's screams and pleas for aid as he was unable to escape the van to avoid the flames. Bystanders entered the rear of the Sprinter van and attempted to extricate him from the vehicle,

but they were unsuccessful. Eventually, Mr. Hartsfield succumbed to his burn injuries and died at the scene.



The torn bulkhead wall attachment fittings, which are demonstrated above by the red arrows, allowed the safety bulkhead wall to press against Mr. Hartsfield's seat back, trapping him inside the burning Sprinter van.

22.     Daimler AG designed and manufactured the base 2013 Freightliner Sprinter van in Germany, including the design of the cargo area anchor ribs known to Daimler to be used to affix after-market cabinetry and equipment. Daimler AG engaged in various agreements with other entities intended to target the marketing, shipment, and sale of the subject vehicle for profit to the

United States, generally, and to Texas, specifically, for profit. After manufacture, Daimler AG exported the base 2013 Freightliner Sprinter van from Germany to South Carolina as a "semi-knocked down" unit. MBV, a wholly owned subsidiary of Daimler AG, re-assembled the subject vehicle in South Carolina. Daimler Vans then marketed the subject vehicle in the United States and in Texas.

23. Daimler AG, and MBV established certain protocols and instructions for how to properly mount cabinets and upfitting items to the rear interior of the subject Sprinter van. These instructions and protocols called for the use of mounting rails and unique fastening techniques designed to distribute the loads associated with crash forces and prevent the catastrophic failure of such upfitted cabinetry during a crash. The subject vehicle's upfitted cabinetry were not installed or mounted consistent with Daimler AG and MBV's own protocols and instructions. The subject Sprinter was returned to MBV after it was upfitted and before it was sold to the end user. MBV had every opportunity to inspect and review the upfitting cabinets installed in the subject Sprinter before it was sold. Yet, neither Daimler AG nor MBV had systems or processes in place to adequately inspect or review upfitting installations in the subject Sprinter. The bottom line is Daimler AG and MBV sold to an end user in Texas a Sprinter van with cabinets installed that violated their own protocols and instructions for safe mounting of such equipment.

### STRICT LIABILITY CAUSE OF ACTION – DESIGN DEFECT – ALL DEFENDANTS

24. Plaintiffs adopt and re-allege each paragraph set forth above.

25. It was entirely foreseeable to and well-known by Defendants that accidents and incidents involving their vehicles and installed equipment, such as occurred herein, would, on occasion, take place during the normal and ordinary use of said vehicles.

26.     The subject Sprinter van and its safety bulkhead wall were unreasonably dangerous and defective because they were not reasonably crashworthy and were not reasonably fit to provide occupant protection during clearly foreseeable accidents. The safety bulkhead wall and its attachment fittings were too weak and flimsy to retain the cargo in the event of a frontal collision. The completed Sprinter van, incorporating the bulkhead area, was unreasonably dangerous and not reasonably crashworthy. Moreover, in light of the design of the bulkhead, the Sprinter van's vehicle structure and seating systems were unreasonably dangerous and defective in the event of a frontal collision.

27.     There were safer alternative designs for the Sprinter van, its structure, its seating system, and the safety bulkhead wall that were economically and technologically feasible and which would have significantly reduced the likelihood of the damages alleged herein.

28.     The Sprinter van and its safety bulkhead wall were unreasonably dangerous and defective within the meaning of § 402A Restatement (Second) of Torts, in that the Sprinter van's occupant protection was unreasonably dangerous because the safety bulkhead wall was prone to failure and could not adequately retain the contents of the cargo area without compromising the driver's survival space. Moreover, the vehicle's structure and driver's seating system were unable to reasonably absorb the crash forces involved in an ordinary and foreseeable frontal collision.

29.     Defendant MBV participated in the design of the subject van and altered or modified the van, including installation of the safety bulkhead wall, consistent with Texas Civil Practice and Remedies Code § 82.003(a)(1), (2), and (3). Defendant Daimler Vans was a seller or retailer of the subject defective completed van and, as such, is liable consistent with the Restatement of Torts (Second) § 402A and Texas Civil Practice and Remedies Code § 82.003(7)(B), if any manufacturer is found to be not subject to the jurisdiction of this Court.

30. The product defects alleged herein were a producing cause of Kendrick Hartsfield's fatal injuries and Plaintiffs' damages.

### LABILITY OF NONMANUFACTURING SELLER PURSUANT TO TEXAS CIVIL PRACTICE AND REMEDIES CODE SECTION 82.003 – MBV AND DAIMLER VANS

31. Plaintiffs adopt each paragraph set forth above as if fully set forth here.

32. Defendant MBV participated in the design of the subject van and altered or modified the van, including installation of the safety bulkhead wall, consistent with Texas Civil Practice and Remedies Code § 82.003(a)(1), (2), and (3). Defendant Daimler Vans was a seller or retailer of the subject defective completed van and, as such, is liable consistent with the Restatement of Torts (Second) § 402A and Texas Civil Practice and Remedies Code § 82.003(7)(B), if any manufacturer is found to be not subject to the jurisdiction of this Court.

33. The product defects alleged herein were a producing cause of Kendrick Hartsfield's fatal injuries and Plaintiffs' damages.

### STRICT LIABILITY CAUSE OF ACTION – MANUFACTURING DEFECT – ALL DEFENDANTS

34. Plaintiffs adopt and re-allege each paragraph set forth above.

35. At all times material to this action, Defendants were the manufacturers of the 2013 Freightliner Sprinter van involved in the subject accident, including the safety bulkhead wall

36. The 2013 Freightliner Sprinter van's safety bulkhead wall, which separated the cargo from the driver's seat, contained a manufacturing defect and deviated from its intended design performance standards for occupant protection and cargo retention. The subject 2013 Freightliner Sprinter van's safety bulkhead wall deviated from its intended output and specifications because its connecting bolts ripped through the bulkhead and structurally failed. The

resulting forward deflection of the safety bulkhead wall into the occupant cabin was excessive, dangerous, and inconsistent with its planned output and specifications. The deformed safety bulkhead wall pinned Mr. Hartsfield inside the Sprinter van, preventing his exit after the subject collision.

37. The manufacturing defects present in the 2013 Freightliner Sprinter van and its safety bulkhead wall alleged herein were a producing cause of Kendrick Hartsfield's fatal injuries and Plaintiffs' damages alleged herein.

## NEGLIGENCE CAUSES OF ACTION – ALL DEFENDANTS

38. Plaintiffs adopt and re-allege each paragraph set forth above as if fully set forth herein.

39. Defendants had a duty to exercise reasonable care in the design, manufacture, assembly, testing, distribution, and marketing of the 2013 Freightliner Sprinter van and its safety bulkhead wall. Defendants had the duty to ensure the 2013 Freightliner Sprinter van and its safety bulkhead wall were able to reasonably protect occupants in the event of a crash. Defendants also has a duty to design, manufacture, and test the subject vehicle's front-end structure and occupant cabin to ensure the subject Sprinter would adequately protect an occupant in the event of a frontal crash. Moreover, Defendants had a duty to reasonably inspect and confirm that the upfitted cabinets installed in their vehicle were properly and safely installed prior to selling the upfitted subject Sprinter van to an end user.

40. Defendants breached their duties and were negligent in the design of the subject vehicle's front-end structure, occupant cabin, and bulkhead wall. Defendants also breached their duties and were negligent in failing to inspect and confirm the upfitted cabinets installed in the

13

subject Sprinter van were installed properly, safely, and in accordance with Daimler AG's own recommendations, instructions, and guidelines.

41. Defendants knew, or, in the exercise of reasonable care, should have known, the negligent acts and/or omissions set forth above would create an unreasonable risk of harm for those persons likely to use the vehicle for the purpose and in the manner for which it was intended to be used. Moreover, the type of incident that occurred is not uncommon and was entirely foreseeable to the Defendants. Defendants' failure to adequately plan, test, design, and manufacture the subject vehicle was negligent.

42. Defendants' negligent acts and omissions were a proximate cause of the damages alleged herein.

## GROSS NEGLIGENCE CAUSE OF ACTION – ALL DEFENDANTS

43. Plaintiffs repeat and re-allege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

44. Defendants' conduct complained of above constitutes gross negligence. Defendants' conduct, when viewed objectively from the standpoint of the actor at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants' conduct constitutes willful and wanton disregard for the rights and safety of drivers, including Mr. Hartsfield.

45. Further, Defendants, by and through their employees and agents, had actual, subjective awareness of the risks to drivers seated in the front of the 2013 Freightliner Sprinter van but proceeded with conscious indifference to the rights, safety, or welfare of such drivers, including Mr. Hartsfield.

## DAMAGES

46. Plaintiffs adopt and re-allege each paragraph set forth above as if fully set forth herein.

47. As a result of Defendants' acts and omissions, Mr. Hartsfield lost his life.

48. Plaintiffs seek damages for Mr. Hartsfield's personal injury, conscious pain and suffering, and mental anguish. Plaintiffs also seek damages for the burial and funeral costs associated with Mr. Hartsfield's death.

49. Plaintiffs have suffered past and future: loss of care, maintenance, support, service, advice, counsel, and reasonable contributions of the pecuniary value, loss of companionship and society, loss of consortium, emotional distress and mental anguish as a result of the death of Kendrick Hartsfield.

50. Plaintiffs seek all damages available under the Texas Wrongful Death Act, both past and future.

51. Plaintiffs seek exemplary damages against all Defendants associated with the gross negligence claims set forth herein.

52. The above and foregoing acts and/or omissions of one or more of the Defendants, resulting in the fatal injuries of Kendrick Hartsfield, have caused actual damages to Plaintiffs in an amount within the minimum jurisdictional limits of this Court.

## CLAIM FOR PREJUDGMENT AND POST-JUDGMENT INTEREST

53. Plaintiffs herein claim interest at the maximum legal rate.

## JURY DEMAND AND PRAYER

54. Plaintiffs request that a jury be convened to try the factual issues of this case.

55. Plaintiffs pray that judgment be entered in their favor against Defendants, jointly and severally, for all damages, as requested herein, the costs of bringing this action, for prejudgment and post-judgment interest at the maximum legal rate, and for such other relief, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

*/s/ Jeffrey T. Embry*
Jeffrey T. Embry
State Bar No. 24002052
Attorney-In-Charge
Christopher P. Peirce
State Bar No. 24046604
Matthew L. Montgomery
State Bar No. 24041509
Margaret C. Pennell
State Bar No. 24116893
Hossley Embry, LLP
515 S. Vine Ave.
Tyler, Texas 75702
Ph.  903-526-1772
Fax. 903-526-1773

**ATTORNEYS FOR PLAINTIFFS**